*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

RACHEL REEB, et al.,

        *Plaintiffs-Appellees,*

     *v.*

OHIO DEPARTMENT OF REHABILITATION AND
CORRECTION, BELMONT CORRECTIONAL
INSTITUTION,

        *Defendant-Appellant.*

No. 04-3994

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00774—Algenon L. Marbley, District Judge.

Argued: October 26, 2005

Decided and Filed: January 24, 2006

Before: KEITH and BATCHELDER, Circuit Judges; OBERDORFER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stephen P. Carney, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellant. Nicholas E. Kennedy, KENNEDY, REEVE & KNOLL, Columbus, Ohio, for Appellees. **ON BRIEF:** Stephen P. Carney, Douglas R. Cole, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, Jack W. Decker, Columbus, Ohio, for Appellant. Nicholas E. Kennedy, KENNEDY, REEVE & KNOLL, Columbus, Ohio, for Appellees. Ann E. Reesman, McGUINESS, NORRIS & WILLIAMS, Washington, D.C., for Amici Curiae.

     BATCHELDER, J., delivered the opinion of the court, in which OBERDORFER, J., joined. KEITH, J. (pp. 12-19), delivered a separate dissenting opinion.

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.  Four named female employees of the Belmont Correctional Institution ("Belmont"), a prison operated by the State of Ohio, filed a class action against Belmont and certain officials under Title VII of the Civil Rights Act of 1964, alleging that female corrections officers have been treated differently from similarly situated male corrections officers and accordingly have been denied promotions, denied leave and overtime, given undesirable positions, and replaced by men.  The plaintiffs specifically requested money damages and an injunction, though they did not specify the conduct they sought to have enjoined.  The U.S. District Court for the Southern District of Ohio certified the plaintiff class, finding that the plaintiffs had shown the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) had been met, and refused to certify the class under subdivision (b)(3).  *Reeb v. Ohio Dep't of Rehab. & Corr.*, 203 F.R.D. 315 (S.D. Ohio 2001) (hereinafter *Reeb I*).  We granted an interlocutory appeal pursuant to Federal Rule of Civil Procedure 23(f) and reversed the grant of certification, finding that the record did not demonstrate that the district court had engaged in the rigorous analysis required to determine whether the Rule 23(a) requirements had been met.  *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. Appx. 550 (6th Cir. 2003) (hereinafter *Reeb II*).

Upon remand, the district court received no new evidence and re-certified the plaintiff class, again finding the requirements of Rule 23(a) and (b)(2) met and declining to certify the class under subdivision (b)(3).  *Reeb v. Ohio Dep't of Rehab. & Corr.*, 221 F.R.D. 464, 469 (S.D. Ohio 2004) (hereinafter *Reeb III*).  We again permitted Belmont's appeal.  Because the district court did not follow our instructions and conduct a "rigorous analysis" of the requirements of Rule 23(a), and because Title VII cases in which plaintiffs seek individual compensatory damages are not appropriately brought as class actions under Rule 23(b)(2) because such individual claims for money damages will always predominate over requested injunctive or declaratory relief, we VACATE the district court's grant of class certification and REMAND the case to the district court for further proceedings.

## I. Factual and Procedural Background

The facts of this case have been stated in the two prior district court opinions and the prior decision of this court.  We therefore adopt the background as set forth in the opinion of the first panel of this court to deal with this case:

> [Belmont] is a prison operated by the Ohio Department of Rehabilitation and Corrections.  It employs approximately 528 people, some of whose positions are covered by Ohio's civil service laws while others are covered by collective bargaining agreements with three distinct unions, District 1199, OCSEA, and OEA.  One Hundred Forty-One of [Belmont's] employees are female-some unknown number of whom are OCSEA members. . . .

> Plaintiffs Reeb and Brown, members of OCSEA, work as female corrections officers at BeCI.  Plaintiff Mackey, a member of OCSEA, also works as a corrections officer at BeCI; yet, for some period of time starting on May 18, 2000, Mackey worked as a secretary in a Temporary Work Level.  Plaintiff Beabout, a member of OCSEA, began working at [Belmont] in 1995 as a corrections officer; on January 16, 2000, Beabout received a promotion to records officer on a permanent basis after holding that position on a Temporary Work Level as of December 1, 1999.

Plaintiffs' complaint alleges that: 1) plaintiffs "have been treated differently, held to a different standard, and given different duties . . . [than] similarly situated male corrections officers"; 2) plaintiffs "are frequently required to perform undesirable positions at BeCI . . . [while] similarly situated male employees are not assigned to such duties"; 3) plaintiffs "are routinely pulled off of their posts and replaced with male [o]fficers because [p]laintiffs are not seen as able to handle difficult situations that may arise with inmates"; 4) plaintiffs "are routinely denied leave and/or overtime, despite having valid excuses or reasons, while similarly situated male [o]fficers are granted leave and/or overtime for much less valid excuses"; 5) plaintiffs are "routinely written up for alleged infractions or rule violations . . . while similarly situated males are not disciplined for the same or more severe infractions"; 6) plaintiffs "have been denied training for various reasons . . . [while] similarly situated male employees have not been denied such training for the same or any reasons"; 7) those female employees who "claimed to have had [sexual] relations with the [w]arden . . . and other supervisors" are "treated substantially better than the rest of the class"; 8) plaintiffs are not promoted while less qualified male officers are promoted because such officers socialize with and bestow various gifts or services upon the warden; 9) plaintiffs have been retaliated against "in the form of increased scrutiny on their behavior and more disparate treatment" because they filed "numerous grievances and complaints regarding such discriminatory treatment" and, subsequently, hired legal counsel; 10) "[m]ale officers routinely allow the male inmates to harass, intimidate, and threaten [p]laintiffs"; 11) the warden "has interfered with the methods and developed processes" that are to protect employees such that plaintiffs have been unable to obtain relief with [Belmont]; and 12) plaintiffs "have routinely been denied promotions . . . over less qualified, similarly situated male correction[s] officers" such that males hold seventeen out of eighteen captain and lieutenant positions. Regarding this last allegation, plaintiffs further allege that [Belmont] "circumvents the [usual] requirements of posting and interviewing for a [promotion] position" by routinely using "a 'temporary position' to place hand-selected males into a promotion position over more qualified females" and later making such "temporary positions" permanent so as to prevent plaintiffs "from even applying for such positions."

The complaint seeks $2 million in compensatory damages, $3 million in punitive damages, attorneys' fees and costs, and declaratory relief. The complaint explicitly seeks neither injunctive relief nor a preliminary injunction. Plaintiffs assert that their request "[t]hat the rights of class members to the relief sought herein be adjudicated and declared" is sufficient to state a claim for injunctive relief. In their motion for class certification, plaintiffs expressly state that, among other relief, they seek injunctive relief. Plaintiffs do not specify what that injunctive relief would entail.

*Reeb II*, 81 Fed. Appx. at 551-52.

On October 25, 2001, the district court certified the class to include "[a]ll those female employees of Defendant Belmont Correctional Institute [sic], past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for [Belmont]." *Reeb I*, 203 F.R.D. at 320. It found the commonality and typicality requirements met because each of the individual plaintiffs claimed to have been the victim of discrimination on the basis of sex as a result of the defendant's general policy. *Id.* at 320-22. In finding that the class should be certified under Rule 23(b)(2), the court stated that the plaintiffs "will feel their rights have been vindicated not by an award of monetary damages alone, but by effecting a change in the way their employer treats females." *Id.* at 323-24. However, the court did not make any findings detailing how it reached its conclusion that the requirements of the rule had been met

other than to state that it could certify a class action under Rule 23(b)(2) "as long as money damages do not constitute the predominate [sic] type of relief requested." *Id.* at 323. It did find, however, that it could not certify the class under Rule 23(b)(3) because the individual considerations regarding the employer's motivation behind its actions towards each plaintiff and her entitlement to compensatory damages would predominate over the common issues in the case, namely Belmont's policy of gender discrimination. *Id.* at 324.

We permitted an appeal of the certification for the purpose of determining when injunctive relief "predominates" in an action in which compensatory damages are also claimed for the purposes of certification under Rule 23(b)(2). *Reeb II*, 81 Fed. Appx. at 553-54. However, we believed it improper to rule on that basis because the record did not show that the district court had conducted a rigorous analysis of the Rule 23(a) factors, and we therefore remanded for closer consideration of whether the Rule 23(a) factors had been met. *Id.* at 554, 559. Moreover, we noted that the district court, at the time it originally certified the class, did not have the benefit of our opinion in *Coleman v. GMAC*, 296 F.3d 443 (6th Cir. 2002), in which we stated that Equal Credit Opportunity Act (ECOA) plaintiffs seeking compensatory damages cannot seek class certification under subdivision (b)(2) because the request for such damages necessarily predominates over any requested injunctive or declaratory relief.

On remand, the district court did not provide the parties the opportunity to present additional evidence or briefs, but issued an order recertifying the class as "all those female employees of Defendant Belmont Correctional Institute [sic], past or present, who are members of the OCSEA and who now work, or at any time during the five years preceding the commencement of this action, worked for the Defendant Belmont Correctional Institute [sic] as corrections officers." *Reeb III*, 221 F.R.D. at 469. Addressing commonality, the court stated that it needed to find only one issue in common among the class members and that "the issue of whether the Defendant's alleged practices violate federal law is a question common to the class." *Id.* at 475. The district court then went on to say that this was not a case where one person suffered a discrete act of discrimination and then sued on behalf of a class of which he happened to be a member; rather, this is a case where the allegation is that the plaintiffs are all members of a class that has been discriminated against based on membership in that class. *Id.* at 476.

The district court stated that the typicality requirement is met "as long as each class member's claim arises from the same course of events." *Id.* at 478 (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). The typicality requirement was satisfied, the court said, because all members of the class—including the named plaintiffs—allegedly suffered as a result of the broad policy of sex discrimination. *Id.* at 478-79.

Finally, with regard to certification under Rule 23(b)(2), the district court distinguished *Coleman* and found that the damages sought in this case would be "relatively simple" to determine and are more like back pay than the compensatory damages sought in *Coleman*. *Id.* at 481. It did not discuss the other damages sought, such as the Title VII damages sounding in tort, the claims for medical damages by the four named class members, and two instances of depression claimed by the named members. The district court certified the class under subdivision (b)(2), noting the rationale of the Second Circuit in *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001): "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* at 482.

Belmont again appeals, arguing that Rule 23(b)(2) classes cannot be certified when plaintiffs request compensatory damages or that, at the very least, they can not be certified in Title VII cases when the plaintiffs request compensatory damages.

## II.  Standard of Review

We may permit an immediate appeal of a district court's decision as to class certification, FED. R. CIV. P. 23(f), and we review the order for an abuse of discretion. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Coleman*, 296 F.3d at 446; *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation. *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000). However, we will find an abuse of discretion when the district court relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment. *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 895 (6th Cir. 1996); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993).

## III.  Rule 23(a)

Federal Rule of Civil Procedure 23(a) provides the prerequisites to certifying a class under one of the Rule 23(b) provisions, stating:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

In *Reeb II*, we instructed the district court to conduct a "rigorous analysis" of the issues necessary to show that the requirements of Rule 23(a) have been met. *Reeb II*, 81 Fed. Appx. at 559. We noted that the court could not perform this function without more precise information as to the nature of each of the named plaintiffs' individual discrimination claims. *Id.* at 556, 559. Upon remand, the district court did not conduct any more hearings and simply attempted to clarify its earlier order by issuing a new one with a new analysis. In doing so, it failed to explicitly examine the named plaintiffs' claims and noted only the plaintiffs' assertion that Belmont had a "general policy" of discrimination. *Reeb III*, 221 F.R.D. at 474.

As we noted in *Reeb II*, the Supreme Court's decision in *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982), requires plaintiffs requesting class certification in a case raising generalized Title VII discrimination claims to allege "'significant proof' that [Belmont] operated under a general policy of gender discrimination that resulted in gender discrimination manifesting itself in 'the same general fashion' as to each of the kinds of discriminatory treatment upon which the pattern-or-practice class action rests." *Reeb II*, 81 Fed. Appx. at 559. The district court, upon remand, noted that *Falcon* dealt with only one plaintiff whose case could have been significantly different from the claims of other class members, whereas this case presents several named plaintiffs who suffered a variety of harms. *Reeb III*, 221 F.R.D. at 475.

We believe that the record in this case is not sufficient for the district court to have conducted the analysis it needed to do in order to make sure the *Falcon* requirements were met. The district court's opinion after the first remand did not adequately examine just what the named plaintiffs are seeking, nor did it review any evidence as to the likely claims that the rest of the class will assert. For example, in order to find typicality and commonality, the precise nature of the various claims must be examined.

The district court found the commonality element of subdivision (a) met "[b]ecause the issue of whether the Defendant violated Title VII will be common to the class . . . ." *Reeb*, 221 F.R.D. at 477. If this were the test, every plaintiff seeking to certify a class in a Title VII action would be entitled to that certification. Plaintiffs argue that the *Falcon* case allows for a finding of commonality whenever a plaintiff asserts that an employer's decision-making with regard to all employees in the protected group manifests itself in the same general fashion. However, this argument ignores the fact that the same general policy of discrimination can affect many different aspects of employment, such as hiring, firing, promoting, giving benefits, providing vacation time, or delegating work assignments.

Moreover, the typicality requirement is not met if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class. Employment discrimination claims require proof that particular managers took particular employment actions and that either the managers were motivated by a discriminatory animus or the actions resulted in a disparate impact upon the class; the district court is therefore required to examine the incidents, people involved, motivations, and consequences regarding each of the named plaintiffs' claims to determine the typicality element of Rule 23(a). *See Falcon*, 457 U.S. at 159 n.15 ("Title VII prohibits discriminatory employment *practices*, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer") (emphasis in original). If there are members of the class that will be asserting any or all of these claims, then there needs to be a class representative who is arguing the same thing–or the plaintiffs must show how their claims are typical in the absence of such a named plaintiff–in order for the district court to find typicality.

Here, the district court seems to have found that the presence of a common question of law regarding whether Belmont had a policy of discriminating against women satisfied both the typicality and commonality elements, but a general policy of discrimination is not sufficient to allow a court to find commonality or typicality. *See Falcon*, 457 U.S. at 159. Because the district court did not examine the nature of the claims raised by the named plaintiffs and the claims likely to be raised by other members of the class, the court did not perform the required analysis of these issues. Indeed, it seems impossible for the court to have done so on the scant record before it at the time it issued the certification order. Nonetheless, because we conclude below that certification of a plaintiffs' class under Rule 23(b)(2) is improper in a Title VII case in which the plaintiffs seek individual compensatory damages, and because the district court has already determined that Rule 23(b)(1) and (b)(3) class certification is not appropriate in this case, we do not reach the question of whether the plaintiffs should have the opportunity to present evidence sufficient to make the required Rule 23(a) showing.

## IV. Rule 23(b)(2)

Federal Rule of Civil Procedure 23(b) authorizes three types of class action suits. To meet the requirements of the rule, the class representatives must show that action meets all of the requirements of Rule 23(a) and, for subdivision (b)(2) classes, that the party opposing the class has affected the class in a way generally applicable to the class as a whole so that final injunctive or declaratory relief with respect to the entire class is appropriate. FED. R. CIV. P. 23(b)(2). Rule 23(b)(1) and Rule 23(b)(2) authorize "mandatory" class actions under which potential class members do not have an automatic right to notice or a right to opt out of the class. Rule 23(b)(3), designed to accommodate claims for money damages, requires notice to the class members, including the member's right to opt out of the class, *see* FED. R. CIV. P. 23(c)(2)(B), and specifies the factors that a court needs to consider in determining whether common issues predominate. *See* FED. R. CIV. P. 23(b)(3).

## A.  Text and History of Rule 23(b)(2)

The starting point in answering the question of when, if ever, a plaintiff class that is seeking compensatory damages may be certified under Rule 23(b)(2) is the text of the Rule:  "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b)(2).  One interpretation of this language is that the rule allows class certification for classes that seek injunctive relief or declaratory relief *only*; the other interpretation allows class certification wherever a class is formed in which class-wide injunctive or declaratory relief would be *one* appropriate means of adjudicating the claim.

The Advisory Committee Notes to the 1966 amendments to Rule 23 further muddy the issue, stating that the "subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate."  FED. R. CIV. P. 23, Advisory Committee Notes 1966, Note on Subdivision (b)(2).  Continuing, the Committee stated that the subdivision is not intended to "extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  *Id.*  Subsequent amendments in 1987, 1998, and 2003 have either made no substantive change or have changed other provisions of the rule not applicable to the interpretation of subdivision (b)(2).

The Supreme Court has never determined whether subdivision (b)(2) classes can be certified in cases in which, in addition to an injunction, the plaintiffs seek monetary relief.  In *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994), a (b)(2) class action, the Court granted certiorari in order to address whether awarding money damages in a mandatory class (one which does not require notice and opt-out procedures) violates the due process rights of the absent class members.  *Id.* at 120-21.  The Court dismissed the case, however, because it had not yet decided whether Rule 23(b)(2) allows a class to pursue money damages, which is a preliminary non-constitutional question.  *Id.* at 121.

## B.  Other Circuits' Treatment of the Issue

In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), the Fifth Circuit reviewed a district court's decision not to certify under subdivision (b)(2) a class that involved more than 1000 potential members seeking relief under Title VII for alleged racial discrimination, requesting back pay, front pay, pre-judgment interest, and attorney's fees.  *Id*. at 407.  The court noted that the Civil Rights Act of 1991changed Title VII to allow plaintiffs to recover compensatory and punitive damages from an employer that engaged in an unlawful employment practice.  *Id.* at 409-10 (citing 42 U.S.C. § 1981a(a)(1)).  Compensatory damages may include future pecuniary losses, emotional damages, suffering, inconvenience, mental distress, hedonic losses, and other nonpecuniary losses. *Id.* at 410 (citing 42 U.S.C. § 1981a(b)(3)).  The 1991 Act's introduction of jury trials into Title VII cases, the court explained, created manageability problems with regard to class action cases under Title VII seeking monetary damages, because the Seventh Amendment and practical considerations make bifurcation, the appropriate method of adjudicating these claims before the 1991 Act, difficult. *Id.*

The *Allison* court then noted that the language of Rule 23(b)(2) is silent as to whether monetary relief may be sought in conjunction with the stated injunctive or declaratory relief, and that the Advisory Committee Notes state that the rule is intended to cover situations where the requested relief "relates exclusively or *predominantly* to money damages."  *Id.* at 411.  From this, the court opined that "at least some form or amount of monetary relief" could be allowed in (b)(2) class actions.  *Id.*

The question, therefore, was what "predominant" means.  To answer this question, the court turned first to the different types of class actions provided for in Rule 23, each of which

"represent[s] a balance struck . . . between the need and efficiency of a class action and the interests of class members to pursue their claims separately or not at all." *Id.* at 412. The (b)(2) class "was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary" and the (b)(3) class "was intended to dispose of all other cases in which a class action would be 'convenient and desirable,' including those involving large-scale, complex litigation for money damages." *Id.* (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983), and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).

The mandatory notice and opt-out availability for (b)(3) classes, the court said, demonstrates the particular concerns that class members have with being members of a class when money damages are at issue. *Id.* at 413 (citing FED. R. CIV. P. 23, Advisory Committee Notes, stating that, to "the degree [that] there is cohesiveness or unity in the class and the representation is effective, the need for notice to the class will tend toward a minimum"). The disparate intentions and motivations of plaintiffs are most noted where monetary damages are at issue, which is why the (b)(3) class mandates notice and the opportunity to opt out and why the (b)(2) class, in which the form of relief sought is declaratory or injunctive in nature, does not contain such a requirement. *Id.* Where claims for individual damages become the more important form of requested relief, "the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases . . . thereby making class certification under (b)(2) less appropriate." *Id.* Therefore, the court concluded, monetary relief predominates when its importance in the litigation suggests that the procedural safeguards found in (b)(3) are necessary. *Id.* If monetary relief does predominate, then subdivision (b)(3) is the appropriate means of class certification. *Id.*; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 844-45 (1999) (stating that, in class actions for money damages, class members are entitled to notice and an opportunity to opt out).

The court then stated its holding, finding that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief," and interpreting "incidental" to mean "damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief, as the text of subdivision (b)(2) refers to 'relief appropriate with respect to the class as a whole.'" *Id.* (internal quotation marks omitted) (emphasis in original). To be more specific, the court stated that damages in these cases should be "concomitant with, not merely consequential to, class-wide injunctive or declaratory relief" and that the computation of such damages should not be "dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* at 415. Damages recoverable would be those that inure to the group benefit, which the court felt was most consistent with the purpose of the (b)(2) class to begin with. *Id.*

The Fifth Circuit viewed this approach as consistent with the position it had taken in past decisions that back pay could be awarded in Title VII cases to members of a (b)(2) class because back pay is an equitable remedy that has always been available under Title VII, as opposed to compensatory and punitive damages, which are legal in nature. *Id.* at 415-16. It then went on to find that the plaintiffs in that case had specifically requested back pay, front pay, compensatory damages, punitive damages, prejudgment interest, attorneys' fees, and retroactive benefits, and affirmed the district court's finding that the presence of claims for individual compensatory and punitive damages were very particularized inquiries that involve considerations of the effect of the defendant's broad policy to an individual's particular circumstances, and therefore, the damages were not "incidental" to the requested injunctive or declaratory relief. *Id.* at 415-17.

The court found that, especially with regard to emotional harm and other intangible injuries, plaintiffs must submit proof of actual injury that necessarily differs from person to person because the nature of the injury is the effect on the person as an individual. *Id.* at 417. Furthermore, findings with regard to availability and amount of punitive damages must be tied to the amount of compensatory damages awarded, so this too turns on individual considerations and is not just a

blanket award based on a showing that a defendant's conduct has caused some harm. *Id.* at 417-18 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996)). It concluded that, because of the individual attention required for determining whether non-class-wide compensatory or punitive damages may be awarded, claims for such damages are not appropriate for a class that is seeking certification under subdivision (b)(2). The Seventh and Eleventh Circuits have adopted *Allison*'s reasoning. *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894 (7th Cir. 1999); *Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2001).

Not all circuits addressing the issue have agreed with this assessment. The Second Circuit noted a textual ambiguity in Rule 23(b)(2) and adopted one of the interpretations of the Advisory Committee Notes cited by the dissenting judge in *Allison*, stating that a district court may certify a class under subdivision (b)(2) despite the presence of a request for compensatory and punitive damages if

> it finds in its informed, sound judicial discretion that (1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.

*Robinson*, 267 F.3d at 164 (2d Cir. 2001) (internal citation and quotation marks omitted). The court added that a district court, in deciding whether to certify a class under subdivision (b)(2), must make sure that plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought even in the absence of any monetary remedies, and that the injunctive or declaratory relief requested would be both necessary and appropriate if the plaintiffs were to succeed on the merits. *Id.* The Ninth Circuit has also chosen to perform a weighing analysis when determining whether or not injunctive or declaratory relief predominates over requested damages in an individual case. *See Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003) (refusing to follow *Allison* because it "would nullify the discretion vested in the district courts through Rule 23" and might have "troubling implications for the viability of future civil rights actions, particularly those under the Civil Rights Act of 1991").

## C. *Coleman v. GMAC* and the ECOA

We noted in *Reeb II* that, upon remand, the district court should consider the effect of our opinion in *Coleman v. GMAC* on the class-certification decision. *Reeb II*, 81 Fed. Appx. at 554. On remand, the district court found that *Coleman* did not apply and expressly adopted the reasoning articulated by the Second Circuit in *Robinson* in reaching its certification decision. *See Reeb III*, 221 F.R.D. at 480.

In *Coleman*, we reviewed a district court's decision to certify a plaintiff class in which the plaintiffs asserted that GMAC discriminated against them on the basis of race in violation of the ECOA. We vacated the class-certification order and remanded for further proceedings in the district court based primarily on the reasoning in *Allison*. 296 F.3d at 445-50. The named plaintiff in *Coleman* sought certification of a class of plaintiffs defined as "[a]ll African American consumers who obtained financing from GMAC in Tennessee pursuant to GMAC's 'Retail Plan-Without Recourse' between May 10, 1989 and the date of judgment and who were charged a finance charge markup greater than the average finance charge markup charged white consumers." *Id.* at 445-46. GMAC opposed the certification, arguing that "the individualized issues regarding liability and damages render the suit inappropriate for class treatment." *Id.* at 446. As did the district court in the case before us here, the district court in *Coleman* found that the proposed class met the requirements of Rule 23(b)(2), but did not meet the requirements of Rule 23(b)(3) because the

plaintiff "had failed to show that individualized factors do not play a role in the [claimed discriminatory practice]." *Id.*

We first noted that there is an "apparent consensus that money damages are recoverable to some extent in a Rule 23(b)(2) class action," but we noted as well that the Supreme Court has expressed concern about the constitutionality of certifying a mandatory class where claims for money damages were involved. *Id.* at 447; *see also In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 881 (6th Cir. 2000) (stating that "principles of sound judicial management and constitutional considerations of due process and the right to jury trial all lead to the conclusion that in an action for money damages class members are entitled to personal notice and an opportunity to opt out"). We then held that compensatory damages sought under the ECOA are not recoverable by a Rule 23(b)(2) class. *Id.*

In making this determination, we found that the defining characteristic of the "mandatory classes" is the homogeneity of the interests of the members of the class; the more individualized determinations come into play, the more divergent the interests of the members of the class become. *Id.* at 447-48. The (b)(3) class, we said, was created for members with divergent interests, and provides the protections of notice and the opportunity to opt out. *Id*. at 448. Further, "class treatment of the claims for money damages implicates the Seventh Amendment and due process rights of individual class members." *Id.* at 448. Because of these concerns, "close scrutiny is necessary if money damages are to be included in any mandatory class in order to protect the individual interests at stake and ensure that the underlying assumption of homogeneity is not undermined." *Id.* (citing *Telectronics*, 221 F.3d at 881).

In *Coleman*, we also examined the Advisory Committee Notes to subdivision (b)(3), something not done by other courts facing the issue of when to certify a (b)(2) class where compensatory damages are sought. In examining that commentary, we noted that a district court can only certify a (b)(3) class where it finds that the common issues predominate because that is the only situation in which the class action format can serve its function in promoting judicial economy. *Id.* A similar concern arises in the (b)(2) context, and one "critical factor" must be whether compensatory relief requested by the plaintiffs will require individualized damages calculations or if that relief will be calculable on a class-wide basis. *Id.*

Furthermore, we found that the purposes of the class action suit are judicial economy and the opportunity to bring claims that would not be brought absent the class action forum because it might not be economically feasible to bring them as individual claims. *Id.* at 448-49. These benefits would not be realized where plaintiffs requested compensatory damages under the ECOA, we said, for three reasons: (1) the request for compensatory damages "undermines the assumption of homogeneity" of the class because each individual member has a stake in the outcome of the litigation but would not have the opportunity to opt out in order to protect that interest; (2) the efficiencies that are to come with class certification would not be realized because of the individual determinations that would be necessary to calculate the amount of damages to which each class member is entitled; and (3) the ECOA provision that provides for an award of attorney's fees and costs to successful plaintiffs reduces the likelihood that these claims would not be brought absent class certification. *Id.* at 449. We found persuasive the fact that the compensatory damages requested would have to be determined by an individualized inquiry into the amount of interest charged to each class member, an inquiry which would predominate over the requested injunctive or declaratory relief. *Id.*

Finally, we explained that our holding is not inconsistent with our precedents allowing back pay as a requested remedy for a certified (b)(2) class because "back pay generally involves less complicated factual determinations and fewer individualized issues" than the computation of compensatory damages, and back pay is an equitable remedy that does not implicate the procedural

and constitutional issues that a damage award does. *Id.* at 949-50. In sum, we concluded that ECOA compensatory damages are not recoverable by a Rule 23(b)(2) class, and that the district court had abused its discretion in certifying the class under Rule 23(b)(2). *Id.* at 450.

**D. Title VII Cases**

*Coleman*'s reliance on the reasoning in *Allison* dictates the outcome of this case. Title VII and the ECOA are virtually indistinguishable in the areas which we thought relevant to our analysis in *Coleman* and, in most instances, the characteristics of Title VII counsel more strongly against allowing individual compensatory damage claims in Rule 23(b)(2) certifications than do those of the ECOA. First, the individual compensatory damages available under the ECOA involve a fairly straightforward interest rate calculation, whereas the damages available under Title VII include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. *Compare* 15 U.S.C. § 1691e(a), *with* 42 U.S.C. § 1981a(a)(1); *see also Coleman*, 296 F.3d at 449.

Furthermore, in an ECOA case, only the issue of damages would need to be determined on an individualized basis. *See Coleman*, 296 F.3d at 449 (citing *Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995)). But in a Title VII case, whether the discriminatory practice actually was responsible for the individual class member's harm, the applicability of nondiscriminatory reasons for the action, showings of pretext, and any affirmative defense all must be analyzed on an individual basis.

Finally, we explained in *Coleman* that whether plaintiffs would bring a suit in the absence of the availability of a class action is a factor to be considered in determining whether or not to allow class certifications. *Id.; see also Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 329 (1980). We found that such suits would be brought on an individual basis because of statutory provisions calling for attorney's fees and costs to be awarded to successful plaintiffs. *Coleman*, 296 F.3d at 449. The same can be said in Title VII cases. Title VII provides the same inducement through its fee-shifting provision, provides an administrative scheme meant to remedy these problems without ever resorting to lawsuits, and allows the EEOC to bring suit on the individual's behalf. 42 U.S.C. § 2000e-5(a), (b) & (k). There is certainly no lack of individual plaintiffs lining up to bring Title VII actions, as any cursory search on Lexis-Nexis or Westlaw will illustrate. Indeed, Title VII after the 1991 amendments appears designed specifically with individual plaintiffs in mind. The district court cited the possibility of retaliation against those who refused to opt out of the class as a possible deterrent to bringing suit, but Title VII provides a cause of action for those retaliated against for participating in a protected activity. *See* 42 U.S.C. § 2000e-3(a).

Accordingly, we hold that, because of the individualized nature of damages calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class necessarily predominate over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2) class. The district court therefore abused its discretion in certifying this class under Federal Rule of Civil Procedure 23(b)(2). We emphasize, however, that this holding does not foreclose all Title VII class actions. Plaintiffs now have the choice of proceeding under Rule 23(b)(3) in an action for money damages or in an action under Rule 23(b)(2) for declaratory or injunctive relief alone or in conjunction with compensatory and punitive damages that inure to the group benefit. And, as always, plaintiffs remain free to bring Title VII actions as individuals.

## V. Conclusion

For the foregoing reasons, we **VACATE** the district court's certification of the class and **REMAND** the case to the district court for further proceedings consistent with this opinion.

---

**DISSENT**

---

DAMON J. KEITH, Circuit Judge, dissenting.  I write separately to express my disagreement with the majority's holding.  The majority improperly holds that the plaintiffs, female corrections officers, who claim that their employer Belmont Correctional Institution discriminated against them based on their sex, cannot bring a class action under Fed. R. Civ. P. 23(b)(2) to collectively enforce the rights and remedies afforded for such violations under both the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

Rejecting the majority's analysis, I would affirm the district court and hold that it did not abuse its discretion by not engaging in a *Falcon* "rigorous analysis" under Rule 23(a).  Further, the district court did not abuse its discretion when it applied the standard in *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) to certify Plaintiffs' case as a Rule 23(b)(2) class. *See Reeb v. Ohio Dep't. of Corr. and Rehab.*, 221 F.R.D. 464, 480 (S.D.Oh. 2004) ("*Reeb III*").

## I.       RIGOROUS ANALYSIS UNDER RULE 23(a)

In *Reeb II*, this Court remanded with instructions for the district court to conduct a "rigorous analysis" necessary to show that the Plaintiffs had met all of Rule 23(a)'s requirements.  *Reeb v. Ohio Dep't. of Rehab.*, 81 Fed.Appx. 550, 559 (6th Cir. 2004) (unpublished) ("*Reeb II*").  The Court directed the district court to follow the Supreme Court's precedent in *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982).

The district court admittedly rejected the instructions on remand and properly distinguished *Falcon*.  The district court distinguished this case from *Falcon* stating that "*Falcon* involved one plaintiff who has been subjected to one form of discrimination, yet he sought to represent a class – of which he was not a part– that had been subjected to a completely different form of discrimination."  *Reeb v. Ohio Dep't. of Rehab.*, 221 F.R.D. 464, 475-76 (S.D.Oh. 2004) ("*Reeb I*").

Notably, the district court properly held the Plaintiffs were able to establish the commonality and typicality requirements.  In regards to commonality, the district court stated that the Plaintiffs needed only to have one common question of law or fact for class certification.  *Reeb III* at 474.  The district court reasoned that the one common issue of fact was the named Plaintiffs' allegation that the defendant maintained a policy of gender discrimination that manifested itself in various ways. *Id.* at 474-75 (citing Rule 23(a)(2) and *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (stating that the requirements for Rule 23(a)(2) are low, requiring that there only be "one common issue the resolution of which will advance the litigation.")).  Here, the Plaintiffs assert that the discriminatory employment practices affected them as well as other members of the class.  The district court properly noted that

> many of the alleged practices– such as the general claims of different treatment and standards, the requirement that women more often perform the undesirable duties, and the inability to apply for promotions based on the use of temporary positions– are likely to apply to all members of the class, including the named Plaintiffs. Other practices– such as the denial of training opportunities and leave, the use of excessive discipline as compared to male employees, and the failure to promote– are more likely to have applied only to certain of the female corrections officers.

*Id*. at 475.

Further, the district court properly held that Rule 23(a)(3)'s typicality requirement is satisfied as long as each class member's claim arises from the same course of events. *Reeb III* at 478 (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). The district court explained that "substantial identity between the operative facts of the named plaintiffs and the class in general is not necessary. . . . [w]hen an overarching policy of discrimination is adequately alleged, the fact that both the named Plaintiffs and the putative class members were equally subjected to that policy is more important than precise identity between the facts of how the policy impacted each class member." *Id*.

The majority rejects the district court's attempt to distinguish *Falcon* and finds that the district court did not obtain any new evidence to determine whether Plaintiffs met Rule 23(a) requirements. Based on the district court's analysis, I would hold that the district court engaged in a rigorous analysis sufficient to certify the class under Rule 23(a). While *Falcon* requires an individual analysis of each plaintiff, this analysis is not necessary here where the members of the class have been subjected to a general policy or practice and the legality of that policy is the focus of the litigation. *Reeb III*.

## II.     CERTIFICATION UNDER RULE 23(b)(2)

The issue before this Court is one of first impression – namely, whether Title VII plaintiffs can bring a class action for injunctive or declaratory relief in the same action that seeks compensatory damages under Fed. R. Civ. P. 23(b)(2). The majority holds that "Title VII cases in which plaintiffs seek individual compensatory damages are not appropriately brought as class actions under Rule 23(b)(2) because such claims for money damages will *always* predominate over requested injunctive or declaratory relief." Majority Op. at 2 (emphasis added).

The majority's holding usurps the legislative discretionary power granted to the district court to certify class actions under Fed. R. Civ. P. 23(c) and ignores the plain language of the Rule. The majority adopts a standard wherein class certification is automatically denied whenever plaintiffs request individual monetary and injunctive or declaratory relief in the same action.

### A.     Class Actions as a Tool for Fighting Systemic Workplace Discrimination

The majority's holding disregards the widespread implications that this holding will have on Title VII plaintiffs ability to file a class action to address and remedy systemic discrimination in the workplace. By creating an irrebutable presumption in Rule 23(b)(2) class actions that whenever monetary and injunctive or declaratory relief is sought in the same action, monetary relief always predominate, the majority prevents plaintiffs who have valid claims for injunctive and monetary relief from filing a class action under 23(b)(2). This holding eliminates class actions' power as a tool to address systemic workplace discrimination and turns the clock back on civil rights.

The Plaintiffs correctly argued against this approach asserting that it "places victims of discrimination in a quandary that Congress never intended: they must either abandon the claims for compensatory damages . . . or they must forfeit the class treatment that may be the only hope for prevailing and for an injunction that will finally end discrimination." (Appellee's Br. at 20.)

Congress passed the 1991 Civil Rights Amendments "to provide appropriate remedies for intentional discrimination . . . and [expand] the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, Pub. L. No. 102-166, 3, 105 Stat. 1071 (1991). "In the battle against institutional discrimination, in 1991 Congress amended the Civil Rights Act and provided for the availability of compensatory and punitive damages for individuals claiming intentional discrimination." Lesley Frieder Wolf, *Evading Friendly Fire: Achieving Class Certification After the Civil Rights Act of 1991*, 100 Colum. L. Rev. 1847, 1848-49 (2000). The majority's holding adversely affects this goal and decreases the

remedies available to Title VII plaintiffs. *See Allison*, 151 F.3d at 432 (Dennis, J., dissenting) (citing H.R.Rep. No. 102-40 (I), at 64-65, *reprinted in* 1991 U.S.C.C.A.N. 549, 602-603 (stating "After the 1991 Civil Rights Act the thrust of Title VII action continues to be society's interest in eliminating discrimination and the individual's interest in being made whole.")).

The Advisory Committee Note to Rule 23(b)(2) specifically states that the primary cases that fall within this Rule are "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Fed. R. Civ. P. 23, Advisory Committee Notes 1966, Note on Subdivision (b)(2) (citing pre-1991 amendment civil-rights cases *Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963); *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), *cert. denied*, 376 U.S. 910, (1964); *Brunson v. Bd. of Trustees of Sch. Dist. No. 1, Clarendon Cty., S.C.*, 311 F.2d 107 (4th Cir. 1962), *cert. denied*, 373 U.S. 933 (1963); *Green v. Sch. Bd. of Roanoke, Va.*, 304 F.2d 118 (4th Cir. 1962); *Orleans Parish School Bd. v. Bush*, 242 F.2d 156 (5th Cir. 1957), *cert. denied*, 354 U.S. 921 (1957); *Mannings v. Bd. of Public Inst. of Hillsborough County, Fla.*, 277 F.2d 370 (5th Cir. 1960); *Northcross v. Bd. of Educ. of City of Memphis*, 302 F.2d 818 (6th Cir. 1962), *cert. denied*, 370 U.S. 944 (1962); *Frasier v. Bd. of Trustees of Univ. of N.C.*, 134 F.Supp. 589 (M.D.N.C. 1955, 3 judge court), *aff'd* 350 U.S. 979 (1956)). These cases demonstrate that historically Rule 23(b)(2) has been used to enjoin invidious discriminatory policies and practices.

The majority suggests that the alternative to Title VII class actions that seek injunctive or declaratory and monetary relief in the same action is for each individual plaintiff to file separate claims or for the Plaintiffs to proceed under Rule 23(b)(3) for solely monetary damages or 23(b)(2) for only injunctive or declaratory relief. Majority Op. at 11. The majority asserts that Title VII plaintiffs will not be foreclosed from filing actions because of the fee shifting provision in 42 U.S.C. § 2000e-5(a),(b), and (k) and asserts that there is no lack of Title VII plaintiffs lining up to file claims. *Id*.

This analysis ignores the overall purpose of class actions and the fact that filing a class action provides greater protections than filing an individual civil rights claim or case where both injunctive and compensatory damages are sought. "Class action lawsuits are an important and valuable part of the legal system [because] they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm." Class Action Fairness Act of 2005, 28 U.S.C. § 1711(a)(1) Note, Pub. L. No. 109-2, 119 Stat. 4 (2005).

The inconsistent adjudication of claims on a case by case basis will do absolutely nothing to remedy systemic workplace discrimination. This holding eliminates the power of class actions to address systemic discrimination on a broad scale that is unparalleled to filing individual suits. *See* W. Lyle Stamps, *Notes and Comments*: *Getting Title VII Back on Track: Leaving Allison Behind for the Robinson Line*, 17 BYU J. Pub. L. 411 (stating that under the *Allison* rule "potential defendants are almost relieved from the large monetary and public relations liabilities concomitant with class action litigation.").

In addition, the majority's holding "derogate[s] from the class action goals of judicial economy and efficiency; affording aggrieved persons a remedy not otherwise economically feasible; enhancing access to the courts by spreading costs; and protecting defendants from inconsistent adjudications." *Allison*, 151 F.3d at 428 (Dennis, J. dissenting). Judicial economy and efficiency are not facilitated by having each individual file separate claims. *Id*. Further, the adjudication of multiple suits will only adversely affect the defendant-employer who will have to comply with multiple inconsistent adjudications.

Ultimately, the majority's holding disarms legitimate classes seeking injunctive and compensatory relief to enforce statutory rights under Title VII. *Id.*

**B.          Addressing *Coleman* and *Allison***

The majority relies on the Fifth Circuit case, *Allison*, and this Circuit's case, *Coleman,* in support of its holding. The majority's holding creates a rule with an irrebutable presumption where plaintiffs seeking individual monetary and injunctive or declaratory relief in the same action will always be denied certification under Rule 23(b)(2). Majority Op. at 2.

In *Allison*, the Fifth Circuit set the standard whereby Rule 23(b)(2) certification is only proper when injunctive relief "predominates" over monetary relief. 151 F.3d at 413. Even though *Allison* adopted a rule in which it would be nearly impossible to certify Title VII class actions under Rule 23(b)(2), it left open the possibility that in some cases where monetary and injunctive relief are sought the class could be certified. *Id.* at 411. The *Allison* court stated "this circuit has chosen an intermediate approach, neither allowing certification without regard to the monetary remedies being sought, nor restricting certification to classes seeking exclusively injunctive or declaratory relief." *Id.* at 411. *See* Majority Op. at 7.

The majority adopts a standard wherein Title VII plaintiffs must seek exclusively injunctive or declaratory relief to be certified under Rule 23(b)(2). Specifically, the majority holds that "Title VII cases in which plaintiffs seek individual compensatory damages are not appropriately brought as class actions under Rule 23(b)(2) because such claims for money damages will *always* predominate over requested injunctive or declaratory relief." Majority Op. at 2 (emphasis added). *See also*, Majority Op. at 11 (holding that "because of the individualized nature of damage calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class *necessarily* predominate over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2) class.") (emphasis added).

Other circuits that have adopted the *Allison* standard, including this Circuit in *Coleman*, have not adopted an unduly restrictive standard like the majority does in the instant case. *See Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894 (7th Cir. 1999); *see also Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2001); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416-17 (5th Cir. 2004).

This Court in *Coleman*, relied on *Allison*, but did not adopt a standard where a request for monetary and injunctive or declaratory relief in a case would be fatal to the plaintiffs' claim. In *Coleman*, the plaintiffs alleged that the defendant credit company discriminated against them on the basis of their race in violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA"). We applied *Allison* to assess whether the plaintiffs' request for compensatory relief undermined the assumption of homogeneity in a Rule 23(b)(2) action. In making this determination, we examined (1) whether each individual had a stake in the outcome of the litigation that could be protected by the opportunity to opt out of the class; (2) whether the individualized determinations necessary to calculate the amount of damages to each class member would be entitled to eliminates the efficiencies created by adjudicating these claims on a classwide basis; and (3) whether the primary justification for class treatment of the claims is largely absent. *Coleman*, 295 F.3d at 449.

In *Coleman*, this Court did not adopt the irrebutable presumption that the majority adopts today. Instead, the Court stated that the district court must make a determination based on the facts whether the injunctive relief requested predominates over monetary damages, and noted that money damages may be recoverable under Rule 23(b)(2). *Id.*

### C.       Plain Language of Rule 23(b)(2)

The majority exceeds the scope of *Coleman* and *Allison* and ignores the plain language of Rule 23(b)(2).  The plain language of Rule 23(b)(2) gives the district court the power to certify a class when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

The plain language establishes only two requirements: (1) that the party opposing the class has acted or refused to act on grounds generally applicable to the class and (2) the plaintiffs seek injunctive relief.  "When these two requirements have been met, certification should be granted because neither the text or its plain meaning establish any further criteria."  Stamps, 17 BYU J. Pub. L. at 426 (citing *Chevron USA v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

Further, the Advisory Committee Notes support the plain language reading.  The Notes indicate that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or *predominately* to money damages."  Fed. R. Civ. P. 23, Advisory Committee Notes 1966, Note on Subdivision (b)(2) (emphasis added).  Neither the text of Rule (b)(2), nor the Advisory Committee Note expressly prohibit district courts from certifying class actions in which the class seeks both injunctive relief and monetary damages.  Thus, the majority's holding does not comport with the plain language of Rule 23(b)(2) or the Advisory Note.

### D.       Majority Exceeds Judicial Power and Usurps the District Court's Discretion

The majority exceeds its judicial power by adopting this rule.  The Supreme Court has admonished that:

> Federal Rules take effect after an extensive deliberative process involving many reviewers: a Rules Advisory Committee, public commenters, the Judicial Conference, this Court, the Congress.  *See* 28 U.S.C. §§ 2073, 2074.  The text of a rule thus proposed and reviewed limits judicial inventiveness. Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure "shall not abridge  . . .  any substantive right."  § 2072(b).

*Allison*, 151 F.3d at 430 (Dennis, J. dissenting) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)).

Specifically, the majority's holding usurps the discretion granted to district courts in Rule 23(c)(1).  Rule 23(c)(1) states "when a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1).  This Circuit and the majority opinion acknowledge that "the district court has broad discretion in determining whether to certify a class, within the dictates of Rule 23."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); Majority Op. at 5 (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000) (stating that "[t]he district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation.")).  By adopting an irrebutable presumption rule, the majority improperly eviscerates the district court's legislatively granted discretion to certify class actions under Rule 23(c)(1).

To give effect to all of the provisions of Rule 23, this Court must adopt a standard wherein the district court is given discretion "to consider all of the evidence and arguments of counsel before certifying a class."  *Hoffman v. Honda of America Mfg.*, 191 F.R.D. 530, 535 (N.D. Oh. 1999).  *See also*, *Moliski v. Gleich*, 318 F.3d 937, 949-950 (9th Cir. 2002) (holding that decisions based on per

se rules are not appropriate because they nullify the discretion vested in the district court through Rule 23). *See also*, *Reeb I* at 323 (properly noting that the court exceeds its judicial powers when it reads the Rules of Civil Procedure as eviscerating substantive rights granted by Congress). *See also Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762 (6th Cir. 2005) (stating that "a statute should be construed to accord meaning and effect to each of its provisions."); *Caferelli v. Yancy*, 226 F.3d 492 (6th Cir. 2000) (same); *Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998) (same); *Fed. Express Corp. v. United States Postal Serv.*, 151 F.3d 536, 546 (6th Cir. 1998) (same). In adopting a narrow rule, the majority exceeds its judicial power.

### E.          Individualized Treatment of Class Plaintiffs

The majority's holding is based on the assertion that allowing Title VII class actions under 23(b)(2) will result in numerous individualized determinations for damages, which will undermine the homogeneity of a class action. Majority Op. at 10-11. The majority states that the damages available under Title VII, "includ[ing] future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses" will result in individualized determinations. Majority Op. at 11. Further, the majority claims that this case cannot be certified under Rule 23(b)(2) because "whether the discriminatory practice actually was responsible for the individual class member's harm, the applicability of nondiscriminatory reasons for the action, showings of pretext, and any affirmative defense all must be analyzed on an individual basis." Majority Op. at 11.

The majority's rationale underlying its holding would make it impossible to certify a Title VII class action under any of the provisions in Rule 23(b)(2). Further, other courts have already addressed this issue by bifurcating the liability and damages phases of the trial. *Allison*, 151 F.3d at 433 (Dennis, J. dissenting) (noting "Title VII class actions for disparate treatment have traditionally been conducted in two stages.")). The *Allison* dissent, cites *Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437, 443-44 (5th Cir. 1974), to explain the bifurcation of Title VII class actions. The *Baxter* court stated that:

> A Title VII class action presents a bifurcated burden of proof problem. Initially, it is incumbent on the class to establish that an employer's employment practices have resulted in cognizable deprivations to it as a class. At that juncture of the litigation, it is unnecessarily complicating and cumbersome to compel any particular discriminatee to prove class coverage by showing personal monetary loss. What is necessary to establish liability is evidence that the *class* of black employees has suffered from the policies and practices of the particular employer. Assuming that the class does establish invidious treatment, the court should then properly proceed to resolve whether a particular employee is in fact a member of the covered class, has suffered financial loss, and thus entitled to back pay or other appropriate relief.

*Allison*, 151 F.3d at 443 (emphasis in original) (citing *Baxter*, 495 F.2d at 443-44; *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360, 97 S.Ct. 1843 (1977); *Franks v. Bowman Transp.*, 424 U.S. 747, 772, 96 S.Ct. 1251 (1976)).

Bifurcated phases of Title VII class actions contemplate separate and distinct issues. *Id.* The first stage focuses exclusively on class-wide claims. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 245 n. 10 (1989) (stating that the focus in Stage I is not on individual hiring decision, but on a pattern of discriminatory decisionmaking) (quotations and citations omitted). Once it has been shown that the employer maintained a policy or practice that unlawfully discriminates in the first stage, the second stage focuses on whether individual employment decisions were made pursuant to any such procedure or policy. *Id.*

Some courts have expressed concerns with the constitutionality of certifying a class action for monetary relief under Rule 23(b)(2) under this procedure. The constitutional concern is that certification under Rule 23(b)(2) is never appropriate because it binds all class members without the safeguards of notice and opportunity to be heard. *Robinson*, 267 F.3d at 164. This concern arises from the Supreme Court cases *Ticor v. Brown*, 511 U.S. 117, 114 S.Ct. 1359 (1994) and *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295 (1999). In *Ticor*, the Supreme Court stated that there is at least a substantial possibility that in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out. 511 U.S. at 121. In *Ortiz*, the Supreme Court suggested that a mandatory class seeking monetary damages should not be certified under Rule 23(b)(2) because such a class compromises the due process rights of absent class members. *See also*, *Coleman*, 296 F.3d at 447.

The solution may be to bifurcate the liability and damages portion of the trial and grant the plaintiffs opt-out rights with regards to their claims for monetary damages. *See* Rule 23(c)(4)(A) (providing that "an action may be brought or maintained as a class action with respect to particular issues."); *Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997) (holding that the language of Rule 23 is sufficiently flexible to afford the district court discretion to grant opt-out rights in Rule (b)(1) and (b)(2) class actions). This would result in the certification of a hybrid class action under Rule (b)(2) and (b)(3). This may address the constitutional concerns that could arise when certifying a Rule 23(b)(2) class that seeks monetary damages.

### F.      The Appropriate Standard

The district court did not abuse its discretion when it adopted the *Robinson* standard. Preliminarily, the *Coleman* case, on which the majority relies, can be distinguished from this case and is not applicable. Further, in *Robinson*, the Second Circuit adopted a standard that appropriately gives the district court discretion and is congruent with the purpose of both the Fed. R. Civ. P. 23(b)(2) and the amendments 1991 to Title VII, 42 U.S.C. § 1981a. This Court should do the same.

The majority improperly states that *Coleman*'s reliance on *Allison* dictates the outcome of this case. Majority Op. at 11. First, this case is a Title VII case, which necessitates applying a different standard than the ECOA claim in *Coleman*. In *Coleman*, this Court specifically stated "it is unnecessary for us to reach the question of whether money damages are ever recoverable in a 23(b)(2) class action, however, because we hold that compensatory damages under the ECOA are not recoverable by a 23(b)(2) class." 296 F.3d at 447. Thus, this Court in *Coleman* limited its holding to ECOA cases, and left open the possibility that monetary relief may be recoverable to some extent in other Rule 23(b)(2) class actions. The holding of *Coleman* does not affect this case since it was limited to the ECOA and did not extend to Title VII cases.

In addition, the district court properly distinguished *Coleman* on the basis of the individualized determinations required to calculate damages. *Reeb III* at 481. The district court stated that "the damages sought here, however, seem more akin to back pay than to the compensatory damages sought in *Coleman*. In *Coleman*, the court noted that 'determining the damages of each class member in this case would involve investigation into the practices of multiple auto dealerships whereas a back pay claim typically involves the practices of a single employer.'" *Reeb III* at 481. The district court went on to note that individual damage assessment would be necessary, if the case proceeded to the liability phase, but stated that a damages' determination would involve only the practices of a single employer and would be simple in comparison to the damage claims in *Coleman*. *Id*.

This Court should adopt the Second Circuit's holding in *Robinson*. The *Robinson* court adopted an ad hoc balancing test where the "district court should at minimum, satisfy itself of the

following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were plaintiffs to succeed on the merits." 267 F.3d at 164. In adopting this standard, the court intended "that when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must consider the evidence presented at a class certification hearing and the arguments of counsel, and then assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Id. See also*, *Hoffman*, 191 F.R.D. at 536; *Eubanks*, 110 F.3d at 92 (stating that Title VII and other civil rights class actions are frequently certified pursuant to Rule 23(b)(2) noting that "although the defining characteristic of the (b)(2) class is that it seeks declaratory or injunctive relief application to the class as a whole, it is not uncommon in employment discrimination cases for the class also to seek monetary relief in the form of front or back pay." (citations omitted)).

## III.    CONCLUSION

For the foregoing reasons, I affirm the district court's decision. The majority improperly holds that Title VII plaintiffs will *never* be able to obtain certification under Fed. R. Civ. P. 23(b)(2) to collectively enforce the rights and remedies under both the 1991 Civil Rights Act, 42 U.S.C. § 1981a, and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e. This holding eliminates class actions' power as a tool to address systemic workplace discrimination and turns the clock back on civil rights. I cannot endorse this holding because it curtails the relief available to Title VII plaintiffs. This holding will obstruct employees' ability to eradicate an employer's discriminatory workplace policies and practices. I vigorously dissent. It is unfortunate that the majority has chosen this case to roll back the clock on years of workplace based civil rights legislation. Until Congress has definitively spoken on this issue, neither should we.