STAFFORD, District Judge.
With leave of this court, the defendant-appellant, UnumProvident Corporation (“Unum”), appeals from the district court’s interlocutory order certifying the plaintiffs’ breach-of-fiduciary-duty action as a class action. We now REVERSE.

BACKGROUND

The case was begun when fifteen individual claimants filed seven class actions in six federal district courts[1] located in six different circuits.[2] The plaintiffs sued Unum, six of Unum’s insuring subsidiaries,[3] and two of Unum’s corporate officers, asserting breach-of-fiduciary-duty claims under section 503(a)(3) of the Employment Retirement Security Act of 1974 (“ERISA”). 29 U.S.C. § 1132(a)(3). With one exception, the plaintiffs were covered by group long-term disability insurance policies purchased by their individual employers either from Unum or one of its subsidiaries.[4] Some of the plaintiffs *425 claimed that they were wrongfully denied long-term disability benefits; others claimed that their long-term disability benefits were wrongfully terminated.
In 2003, the cases were consolidated in the Eastern District of Tennessee by the Judicial Panel on Multidistrict Litigation. Seven of the plaintiffs thereafter settled their claims, and an eighth plaintiff ultimately received the benefits she was seeking. Those eight plaintiffs have been dismissed from the action, leaving seven plaintiffs who seek to proceed with this consolidated action.
A. The Allegations:
The plaintiffs allege that Unum[5] devised and implemented a corporate-wide scheme to illegally deny or terminate the long-term disability claims of thousands of disabled Americans, all in violation of ERISA. Specifically, in their Consolidated Amended Class Action Complaint, the plaintiffs allege that Unum engages in the following practices:
a. Instituting targets, budgets, or goals for cost-savings to be attained through the denial and termination of claims; the claims do not receive a proper review by a fiduciary and are denied or terminated based upon UnumProvi-dent’s financial targets rather than the medical and vocational evidence concerning claimants’ disabilities;
b. Providing financial incentives to in-house physicians who will “rubber stamp” previously made business decisions; the physicians thus ignore their appropriate ethical obligations and overlook strong medical evidence that would ordinarily require a disability claim to be approved.
c. Implementing of compensation and/or bonus plans that reward Company management for denying or terminating as many claims as possible to meet special financial goals set by the Company.
d. Authorizing more senior in-house doctors to alter the written reports of other “uncooperative” in-house doctors in order to justify a claim denial or termination;
e. Creating secret documents for each claim, at the time that claims are filed, that, upon information and belief, sets [sic] a target date for cutting off future disability payments; these “Duration Management” documents reflect business decisions made by non-medical claims personnel as to when the company believes claim payments should stop in the future; physicians are not involved in creating these secret documents which are kept outside of the claims file and withheld from claimants, their attorneys, and reviewing courts, and are not produced in discovery during litigation;
f. Encouraging a game among the in-house physicians called the practice of “insurance medicine;” these in-house physicians are prompted, encouraged, and pressured into (1) changing their valid medical opinions as to a claimant’s disability in order to justify a business-driven claim denial; (2) closing their eyes to numerous sources of medical evidence that support a claimant’s disability; (3) remaining quiet about their personal medical opinions that require further analysis, review, testing, and follow up that would reveal the claimant’s obvious disability; and (4) putting “canned” statements into their written reports that, on the surface, appear to validate a previous decision by claims *426 personnel to terminate ongoing disability payments to a claimant or to deny a claim in the first instance.
g. Recruiting claims personnel who have a reputation for “closing claims” (cutting off the ongoing monthly benefits of disabled individuals);
h. Designing a system in which claimants who have multiple disabling conditions will never receive an integrated overview as to how all of the disabling conditions combine to disable the claimant; by deliberately fragmenting the claim into a number of pieces and preventing a comprehensive review of individuals with “co-morbid” conditions, the Company ensures that the claimant will not receive a comprehensive and fair review of the claim; and
i. Employing numerous other practices that pressure claims handling personnel into causing claims to be denied or terminated without receiving a proper review.
Allegations regarding the seven plaintiffs who remain in the case include the following:
Theresa Keir worked as a financial systems analyst for a real estate company when she became insured under a group long-term disability policy issued by Unum to her employer. In March of 2000, Keir claimed disability arising out of breast cancer surgeries in her left and right breasts, spinal fusions in her low back, removal of a precancerous ovarian cyst, dermatomyoci-tis, two herniated discs in her neck, and fibromyalgia. Based on an in-house review of her medical records, Unum denied Keir’s claim to disability benefits in December of 2000. On appeal, Unum upheld the adverse benefits decision.
Michelle Lynn Washington was employed as an attorney when she became insured under a group long-term disability policy issued by Unum. On May 29, 1998, Washington claimed disability arising from mitral valve prolapse, iron deficiency, anemia, hypothyroidism, cervical discogenic disease, cervical myofascial pain, L-5 radi-culopathy, fibromyalgia, and depression. Unum paid Washington disability benefits for almost three years before terminating those benefits in 2001 based upon an in-house medical review that purportedly revealed that Washington could resume her full-time employment as an attorney. On Washington’s appeal, Unum upheld the termination of benefits.
Karen Gately was employed as a registered nurse when she became insured under a group long-term disability policy issued by Unum. Gately claimed disability on or about August 1, 1995, arising from fatigue, loss of balance, joint pain and swelling, short term memory loss, and confusion, all arising from lyme disease. After paying disability benefits to Gately for seventy months, Unum terminated her benefits in November of 2001, allegedly because her file contained no objective data regarding her “Epstein Barr virus, lyme disease, chronic fatigue, and cognitive dysfunction.” On review, Unum upheld its decision to terminated Gately’s benefits.
Thomas Rocco was employed by the Canadian Imperial Bank of Commerce when he became insured under a group long-term disability policy issued by Unum. On or about February 2, 2000, Rocco claimed disability arising from symptoms associated with Meniere’s disease, chronic obstructive pulmonary disease, diabetes mellitus II, hearing loss, and anxiety disorder. Rocco received disability benefits for approximately nine months before his benefits were terminated in May of 2001. On review, Unum upheld its decision to terminate Rocco’s benefits.
Thomas P. Davis was employed as a product safety reporting associate when he became insured under a group long-term disability policy issued by The Prudential *427 Insurance Company, thereafter The Hartford. Davis claimed disability in July of 1991 arising from labyrinth dysfunction, which produced balance and reading disabilities. The Prudential/Hartford paid Davis long-term disability benefits until February of 2001, when Unum — as substituted administrator — terminated his benefits. Those benefits were reinstated by Unum before the plaintiffs filed their Consolidated Amended Class Action Complaint in early 2004. Unum contends that Davis has received all benefits to which he was/is entitled.
Marvina Jenkins was employed as a bank loan officer when she became insured under a group long-term disability policy issued by Unum. In April of 1999, Jenkins claimed disability arising from cognitive injury due to oxygen deprivation to the brain and anoxic encephalopathy, producing an IQ of 62. Jenkins received disability benefits until September of 2000, when Unum terminated her benefits, claiming that she was fit to return to work. It is not alleged that Jenkins sought review of Unum’s decision to terminate her disability benefits.
Edmundo M. Romberio was employed as a mechanical technician by a communications company when he became insured under a group long-term disability policy issued by Unum. On or about May 16, 2000, Romberio claimed disability arising from the debilitating effects of diabetes, including permanent diabetic neuropathy, blurred vision, dizziness, severe fatigue, and nerve damage. Unum denied Rom-berio’s request for disability benefits, then informed him that coverage under his policy would be terminated. It is not alleged that Romberio sought review of Unum’s decision. On or about October 29, 2001, Unum terminated Romberio’s coverage.
In their Consolidated Amended Class Action Complaint, the plaintiffs requested injunctive and declaratory relief pursuant to 29 U.S.C. § 1132(a)(3).[6] In particular, the plaintiffs requested an order directing Unum to (a) cease the offending practices of wrongfully denying, terminating, or suspending plan benefits; (b) institute, under appropriate judicial supervision, new procedures that fully comply with ERISA; and (c) provide a full and fair review — by a receiver and/or special master appointed to serve as a neutral claims adjustor — “for all claims for benefits under the plan that have been affected by the offending claims practices and thus wrongly denied.” In the alternative, the plaintiffs requested imposition of a constructive trust over any trust assets controlled by Unum.
B. Class Certification Proceedings:
The plaintiffs requested certification of a class defined as follows:
All plan participants and beneficiaries insured under ERISA[-] governed long-term disability insurance policies/plans issued by UnumProvident and the insuring subsidiaries of UnumProvident throughout the United States who have had a long-term disability claim denied, terminated, or suspended on or after June 30, 1999 by UnumProvident or one or more of its insuring subsidiaries after being subjected to any of the practices alleged in the Complaint.
Unum opposed the motion for class certification, arguing, among other things, that
*428 (1) the existence of individualized issues on both liability and remedy precludes any finding of the homogeneity and cohesiveness required for certification under Rule 23(b)(2); (2) the immature tort doctrine precludes certification because of the very novelty of this [§ ] 502(a)(3) claim; (3) each class member who believes his or her claim was wrongfully denied has both an economically viable cause of action, and a means of bringing it; (4) any payments of benefits they expect as a result of this case are not plainly incidental to the declaratory and injunctive relief that they claim is the focus of their claims; and (5) the incompatibility between these claims and Rule 23 certification is highlighted by the defective nature of the class definition
In re UnumProvident Corp. ERISA Benefits Denial Actions, 245 F.R.D. 317, 322 (E.D.Tenn.2007) (internal quotation marks and citation omitted).
The district court conducted a hearing on the plaintiffs’ motion for class certification on July 18, 2007. The district court thereafter issued a memorandum opinion, explaining that, among other things, (1) the plaintiffs’ proposed class definition is sufficiently definite to determine who is or is not a class member; (2) typicality is present because the plaintiffs’ allegations “will involve a determination of whether Unum implemented a uniform, profit-driven scheme to deny all claims based on financial concerns, rather than based on the actual merits of the applications for benefits;” (3) the plaintiffs are representative of the class, all having allegedly been subject to an improper uniform policy of denying claims based on the company’s profits; (4) the plaintiffs’ counsel are qualified and capable of handling the litigation; and (5) the plaintiffs have satisfied the requirements of Rule 23(b)(2) because the common claim is subject to a single injunc-tive remedy — namely an injunction to end or ameliorate Unum’s alleged unlawful claims review policy. Consistent with its findings and conclusions, the district court certified the class, using the class definition proposed by the plaintiffs.

STANDARD OF REVIEW

This court reviews a district court’s grant of class certification for abuse of discretion. Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir.2002). A district court abuses its discretion when it “applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.” Schachner v. Blue Cross & Blue Shield of Ohio, 77 F.3d 889, 895 (6th Cir.1996) (internal quotation marks and citation omitted). This court will not find an abuse of discretion unless it has a “definite and firm conviction that the trial court committed a clear error of judgment.” Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 613 (6th Cir.2002) (internal quotation marks and citation omitted). When ruling on a motion for class certification, the district court must exercise its discretion within the framework of Rule 23.

DISCUSSION

Before certifying a class action, a district court must conduct a “rigorous analysis” into whether the requirements of Rule 23 have been satisfied. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir.1998) (en banc). Under Rule 23(a), a party seeking class certification must show that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) *429 the representative parties will fairly and adequately protect the interests of the class. In addition to the prerequisites of Rule 23(a), a party seeking class certification must satisfy one of the three subsections of Rule 23(b). Here, the plaintiffs have moved for certification under Rule 23(b)(2), which demands a showing that “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.” Fed.R.Civ.P. 23(b)(2).
According to Unum, the district court failed in its responsibility to conduct the rigorous analysis required for class certification, failing — in particular — in its analysis of the typicality requirement under Rule 23(a)(2) and the element of cohesiveness under Rule 23(b)(2). Citing Sprague and Reeb v. Ohio Dep’t of Rehabilitation and Correction, 435 F.3d 639 (6th Cir.2006), Unum contends that, as part of its rigorous analysis, the district court was required to examine the precise nature of the plaintiffs’ claims as well as the proof required to establish those claims. Reeb, 435 F.3d at 644-45 (explaining that allegations of a “general policy” of discrimination are inadequate to establish entitlement to class certification; instead, “rigorous analysis” requires precise information about the incidents, people involved, motivations, and consequences regarding each of the named plaintiffs’ claims); Sprague, 133 F.3d at 397-98 (noting that certification was not proper merely because the plaintiffs challenged General Motors’ system-wide general policy that changed retirees’ health benefits; instead, the district court was required to examine what the plaintiffs would have to prove to establish their individual claims); see also Fed.R.Civ.P. 23(c)(1)(B) (requiring a district court, when certifying a class, to define not only the class but also the “class claims, issues, or defenses”).
While acknowledging that Reeb called for a searching examination of the precise nature of the plaintiffs’ claims, the district court suggested that the lessons of Reeb were limited to cases involving generalized claims of employment discrimination. Without explaining why those lessons would be inapplicable in a case involving the denial of disability benefits, the district court declined to perform a rigorous analysis of the plaintiffs’ claims, merely stating: “[T]he Court will not need to confront such individual determinations here.” The district court’s refusal to look more closely at the plaintiffs’ claims, and also to the defenses that Unum might raise in response to those claims, is puzzling.
To prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also caused harm by that breach. Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir.1995). A causal connection between the alleged breach and the alleged harm is thus a necessary element of an ERISA-participant’s breach-of-fiduciary-duty claim. WTiere, as here, the alleged breach purportedly results in the wrongful denial or termination of a participant’s benefits, the existence of a causal link between the breach and the harm is particularly dependant upon the equities of the participant’s claim. Absent a showing that benefits were wrongfully denied, there can be no causal link between an alleged breach and a denial of benefits; and whether a claim for benefits is wrongfully denied depends on a number of factors peculiar to the claimant’s case. See Hein v. FDIC, 88 F.3d 210, 224 (3d Cir.1996) (dismissing the plaintiffs breach-of-fiduciary-duty claim, explaining that “[bjecause [the plaintiff] was not entitled to the benefits in the first place, there is no causal link between the alleged breach of fiduciary duty by [the defendants] and the denial of benefits to [the plaintiff]”).
*430 Here, the plaintiffs have alleged that Unum breached its fiduciary duties by wrongfully denying or terminating disability insurance benefits on the basis of a uniform, profit-driven scheme. Indeed, central to the district court’s class certification decision was its conclusion that “the theory of liability asserted by Plaintiffs in this case does not focus on individual factors ... because Plaintiffs have characterized their lawsuit as a challenge to Unum-Provident’s uniform policies and practices with respect to reviewing claims.” Dist. Ct. Order of Certification (emphasis in original). That a uniform scheme is alleged, however, does not mean that a class is easily identified or that a class action is necessarily appropriate.
As requested by the plaintiffs, the district court in this case defined the class to include only those plan participants and beneficiaries whose long-term disability benefits were denied or terminated “after being subjected to any of the practices alleged in the Complaint.” The district court rejected Unum’s argument that, to determine who belongs in a class so defined, thousands of claim files would have to be examined to see if any of the alleged wrongful practices were employed in any particular case. While recognizing that “[i]t may be necessary for the Court to make some factual inquiry,” the district court concluded that the class definition was “sufficiently definite so that it is feasible to determine who is or is not a class member.” The district court relied on Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101 (5th Cir.1993) in reaching its conclusion.
In Forbush, a retired employee (For-bush) sought class certification in her lawsuit challenging the mathematical formulae used by J.C. Penney to calculate a retiree’s estimated social security payments. The method used to estimate such payments was important because, under the company’s retirement plans, the pension benefits due to retirees were offset by the amounts they were expected to receive from the Social Security Administration. Forbush sought to represent all former and current Penney employees “whose pension benefits have been or will be reduced or eliminated as a result of the overestimation of their Social Security benefits.” Id. at 1103. The various employees included in the class were covered by four different pensions plans; and, during the relevant time period, three different formulae were used to estimate a retiree’s social security benefits. The district court denied Forbush’s motion for class certification, concluding that “each class member’s claim will have to be decided on an individual basis.” Id. at 1104. In a two to one decision, the Fifth Circuit reversed, stating: “The concerns expressed by [the dissent], as well as the district court, regarding the necessity of individualized determinations are important but not, we believe, dispositive, at least at this stage of the litigation.” Id. at 1106. The court noted that the class could be divided into sub-classes to resolve any issues arising from the use of three formu-lae.
Here, the district court’s reliance on Forbush is unmerited. In Forbush, the plaintiff challenged a very specific practice uniformly applied to a discrete, easily-defined group of individuals. Indeed, every retiree in the class had his or her pension benefits calculated by using one of three mathematical formulae for estimating retirees’ social security payments. If the mathematical formula was improper as used for one retiree, it was improper for every other retiree whose benefits were determined by application of that formula.
Unlike the plaintiff in Forbush, the plaintiffs in this case challenge a group of loosely-defined practices that were not applied uniformly to a discrete, easily-defined *431 class of individuals. Indeed, the record reveals that TJnum pays billions in disability benefits annually, which means that, despite Unum's alleged profit-driven claim review practices, many claimants success-fuliy pass through the process and receive disability benefits as a result. Nor can it be said that all class members whose claims for long-term disability benefits were denied or terminated would have been entitled to benefits but for TJnum's use of the alleged improper practices. Some of the denials and/or terminations were no doubt merited for medical reasons. As even a cursory search on Westlaw or Levis Nexis will illustrate, many individuals who request disability benefits-whether under ERISA or social security-are unable to establish entitlement to those benefits. It follows that a class limited to those perSons whose benefits were denied or terminated would necessarily include many individuals whose claims were properly denied for medical reasons.[7]
To be sure, the district court did not define the class as including those participants whose disability claims were denied or terminated. The court was more specific, defining the class to include those participants whose claims were denied or terminated "after being subjected to any of the practices alleged in the Complaint." Such definition, however, does little to distinguish between the set of individuals whose claims were properly denied for valid medical reasons and the set of individuals whose claims were improperly denied for profit-driven reasons. Indeed, as Tinum has correctly argued, the only way to distinguish between the two sets of mdi-viduals is to engage in individualized fact-finding, and the need for such individualized fact-finding makes the district court's class definition unsatisfactory. See John v. Nat'l Sec. Fire and Cas. Co., 501 F.3d 443, 445 (5th Cir.2007) (noting that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23"); Crosby v. Social Sec. Admin., 796 F.2d 576, 580 (1st Cir.1986) (explaining that a class definition should be based on objective criteria so that class members may be identffied without individualized fact finding); 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.21[3][c] (3d ed.2007) (explaining that "[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class").
The problem with the class definition, moreover, carries over into problems with typicality. As the court explained in Sprague, 133 F.3d at 399: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." There must be some connection, in other words, between the merits of each individual claim and the conduct affecting the class. Absent such a connection, there is no basis upon which to fashion class-wide relief. Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir.2006), the typicality premise is lacking, for-under those circumstances-it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members.
Relying on a statement taken from Judge Martin's dissenting opinion in *432 Sprague, the district court began its discussion of typicality by stating: "The test for typicality .. . is not demanding." Sprague, 133 F.3d at 415 (internal quotation marks and citation omitted). The district court went on to state that, while typicality is generally lacking when liability turns on individualized factors, typicality is not lacking in this case because the plaintiffs "characterized their lawsuit as a challenge to TjnumProvident's uniform policies and practices with respect to reviewing claims." We find the district court's analysis unpersuasive.
Here, the class members-who worked in different jobs, had different vocational skills, had different impairments, and experienced different disability review procedures managed by different claim representatives-are entitled to relief if, and only if, TJnum wrongfully denied or terminated their benefits. That all of the plaintiffs may have been subjected to some or all of Tjnum's alleged wrongful practices does not eliminate the need for an individualized assessment as to the ultimate propriety of the benefits decisions affecting each and every class member. Because individualized assessments are necessary, it cannot be said that if a named plaintiff succeeds in establishing Unum's liability for breach of fiduciary duty, "so go the claims of the class." Sprague, 133 F.3d at 399. Typicality is thus lacking.
In Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999 (8th Cir.2004), the plaintiff alleged that an ERISA-plan fiduciary engaged in a practice of first awarding longterm disability benefits to a claimant, then terminating or suspending those benefits without asking for or receiving evidence that the claimant's conditions had changed. Among other things, the plaintiff sought injunctive relief for other claimants affected by the same practice. The district court denied the plaintiffs motion for class certification, finding that the plaintiff could not meet the threshold typicality requirement, given that the propriety of terminating any other claimant's benefits was dependent on the facts of each individual case. The Eighth Circuit affirmed, noting that, even if the plaintiff established a breach causing harm to her, the question of whether a breach caused harm to others remained "a case-by-case determination." Id. at 1005; see also Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137-38 (3d Cir.2000) (affirming district court's denial of class certification for class of beneficiaries whose benefits were wrongfully delayed because "the issue of liability itself requires an individualized inquiry into the equities of each claim"). Like the plaintiffs in Parke and Holmes, the plaintiffs in this case have failed to demonstrate typicality.
Even if the plaintiffs were able to demonstrate typicality, they have not shown that certification under Rule 23(b)(2) is appropriate. That rule provides that a class action may be maintained if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R.Civ.P. 23(b)(2). A class action under Rule 23(b)(2) is referred to as a "mandatory" class action because class members do not have an automatic right to notice or a right to opt out of the class. The defining characteristic of a mandatory class is "the homogeneity of the interests of the members of the class." Reeb, 435 F.3d at 649. Because homogeneity is required, unitary adjudication of the claims is feasible without the devices of notice and opt-out. On the other hand, where individualized determinations are necessary, the homogeneity *433 needed to protect the interests of absent class members is lacking. Id.
In response to Unum’s argument that a Rule 23(b)(2) class is inappropriate in this case because of the lack of homogeneity, the plaintiffs suggest that the presence of individual issues is immaterial because Rule 23(b)(2), unlike Rule 23(b)(3), contains no predominance requirement.[8] They do not address the well-recognized rule that Rule 23(b)(2) classes must be cohesive. See Lemon v. Int’l Union of Operating Eng’rs, 216 F.3d 577, 580 (7th Cir.2000) (explaining that “Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members”); Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir.1998) (noting that “[wjhile 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive”). The Barnes court recognized two reasons why cohesiveness, or homogeneity, is vital to Rule 23(b)(2) actions:
First, unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action. Thus, the court must ensure that significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representatives’s claims present different individual issues than the claims of the absent members present. Second, the suit could become unmanageable and little value would be gained in proceeding as a class action if significant individual issues were to arise consistently.
Id. (internal quotation marks, ellipses, and citation omitted).
The plaintiffs in this case request, among other things, both imposition of a constructive trust as well as entry of an order requiring Unum “to provide a full and fair review ... of all claims for benefits under the plan that have been denied.” The plaintiffs do not explain how a constructive trust could be imposed without individualized review of every claim that was denied. Nor do they explain how the court could, if it ordered “a full and fair review ... of all claims for benefits under the plan that have been denied,” avoid exposing Unum to what Unum describes as “a one-way ratchet where [Unum] can lose but never win.” As Unum correctly asserts, Unum would have to provide the very relief requested (i.e., re-review) in order to determine whether any individual was, in the first instance, a class member, and, in the second instance, entitled to relief for an improper denial or termination of benefits. Class certification under the circumstances was an abuse of discretion.

CONCLUSION

For the foregoing reasons, we will REVERSE the district court’s order of certification.

. The Southern District of New York, the District of Massachusetts, the Northern District of California, the Eastern District of Pennsylvania, the Eastern District of Tennessee, and the Southern District of Illinois.

. The First, Second, Third, Sixth, Seventh, and Ninth Circuits.

. The insuring subsidiaries are The Paul Revere Life Insurance Company, Provident Life and Accident Insurance Company, Provident Life and Casualty Insurance Company, First Unum Life Insurance Company, Unum Life Insurance Company of America, and Colonial Life & Accident Insurance Company.

.The one exception is Thomas Davis. It is alleged that Davis was insured under a group long-term disability policy issued by The Prudential Insurance Company, thereafter The Hartford, neither of which is alleged to be a subsidiary of Unum.

. Unum is appealing on behalf of itself and the other corporate defendants. We refer to the group of corporate defendants as Unum.

. ERISA section 1132(a)(3) is a catchall remedial provision that authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this sub-chapter or the terms of the plan.”

. Counsel for the plaintiffs conceded at oral argument that a class of persons whose benefits were denied or terminated would necessarily include some individuals whose claims were properly denied for medical reasons.

. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members.”