IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 9, 2024 Session

**JANET DOE v. CITY OF MEMPHIS, TENNESSEE**

**Appeal from the Circuit Court for Shelby County**
**No. CT-003516-14        Gina C. Higgins, Judge**

---

**No. W2023-01222-COA-R3-CV**

---

This is an appeal from a class certification. Because the trial court failed to clearly define the class being certified, we are unable to proceed to review the trial court's decision. Therefore, we vacate the trial court's certification order and remand for further proceedings as may be necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Jonathan P. Lakey, John Joseph Cook, Lani Danielle Lester, and Robert D. Meyers, Memphis, Tennessee, for the appellant, City of Memphis.

Gary K. Smith, C. Philip M. Campbell, Daniel Owen Lofton, and Paul Forrest Craig, Memphis, Tennessee, for the appellee, Janet Doe.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arose from public announcements made by the City of Memphis ("the City") in August and October 2013 regarding thousands of sexual assault kits ("SAKs") it had in its possession. On August 15, 2014, nearly a year after the first public announcement, Megan Ybos, Madison Graves, and Rachel Johnson (collectively, "the initial plaintiffs") filed a complaint against the City and Shelby County, Tennessee[1] on behalf of themselves and as "class representatives for all others similarly situated." They

---

[1] The record contains no order dismissing Shelby County from the lawsuit, but the county is not a party to this appeal.

asserted claims for negligent infliction of emotional distress and reckless infliction of emotional distress. The initial plaintiffs alleged that they had all been victims of sexual assaults and that each participated in a forensic examination that yielded evidence that was placed in a SAK. They further alleged that, years after the sexual assaults, it was determined that the same assailant raped all three women. The initial plaintiffs claimed that they suffered severe emotional distress due to the City's mishandling of their SAKs, which allowed their assailant to remain at large when he "might otherwise have been apprehended" and due to the City's "shocking and haphazard" public media disclosures in August and October 2013.

On September 23, 2014, the initial plaintiffs filed an amended complaint to add a request for damages in the amount of $1,400,000 with a maximum recovery of $700,000 per defendant. The initial plaintiffs amended the complaint a second time on October 16, 2015, asserting the same claims asserted in the previous pleadings but adding Janet Doe as a plaintiff and identifying her as the "lead class representative." The second amended complaint removed Ms. Ybos from the case, and the trial court entered an order on December 17, 2015, dismissing her claims as time-barred. After the parties engaged in some discovery, Ms. Johnson and Ms. Graves voluntarily dismissed their claims in March and May 2021, respectively, because the undisputed facts showed that their SAKs were timely submitted for DNA testing and that their assailant had been apprehended. The case then proceeded with Ms. Doe as the sole plaintiff.

On October 12, 2018, more than four years after the lawsuit began, the plaintiffs filed a motion seeking class certification under Tenn. R. Civ. P. 23. The trial court heard arguments on the motion in October 2022 and entered an order on August 16, 2023, granting it. The City appealed pursuant to Tenn. Code Ann. § 27-1-125,[2] and presents the following issues for our review: whether the trial court erred by failing to properly define the class, and whether the trial court erred in finding that Ms. Doe satisfied the requirements of Tenn. R. Civ. P. 23.

STANDARD OF REVIEW

This Court has explained the standard of review applicable to class certification questions as follows:

---

[2] Tennessee Code Annotated section 27-1-125 states as follows:

> The court of appeals shall hear appeals from orders of trial courts granting or denying class certification under Rule 23 of the Tennessee Rules of Civil Procedure, if a notice is filed within ten (10) days after entry of the order. All proceedings in the trial court shall be automatically stayed pending the appeal of the class certification ruling.

A trial court's decision on class certification is entitled to deference. *See Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996). The grant or denial of class certification is discretionary, and the court's decision will stand absent abuse of that discretion. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). The abuse of discretion standard typically applies when a choice exists in the trial court among several acceptable alternatives. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Because the trial court is vested with the responsibility to make that choice, a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable. *Id.* at 524 (citations omitted). A reviewing court must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). The same principles apply here; a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion. *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Beecher*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

*Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648, at *3 (Tenn. Ct. App. Feb. 23, 2011).

Under the abuse of discretion standard, a trial court's discretion is not unbounded. A trial court must consider controlling legal principles and relevant facts when making a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). An abuse of discretion occurs if a trial court (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb*, 320 S.W.3d 246, 249-50 (Tenn. 2010). A trial court also abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Beecher*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

When reviewing a lower court's discretionary decision, an appellate court determines "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's

decision was within the range of acceptable alternative dispositions." *Id.* at 524-25 (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)).

We review a trial court's factual findings de novo without a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). A trial court's legal conclusions, however, are reviewed de novo with no presumption of correctness. *Beecher*, 312 at 525 (citing *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)).

ANALYSIS

Before turning to the issues presented, we note that Tennessee Rule of Civil Procedure 23 sets forth the requirements for class certification. The proponent of class certification bears the burden of showing that Rule 23's requirements have been satisfied. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 307 (Tenn. 2008). This burden is a two-step process. First, the proponent must demonstrate compliance with all of the following requirements in Rule 23.01:

> (1) [T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

TENN. R. CIV. P. 23.01.

Second, the proponent must show that the proposed class meets one of the three requirements listed in Rule 23.02, which are as follows:

> **(1)** the prosecution of separate actions by or against individual members of the class would create a risk of
> (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; or
> **(2)** the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

**(3)** the court finds that the question[s] of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

TENN. R. CIV. P. 23.02.

I. Class Definition

In determining that class certification should be granted in this case, the trial court concluded that Ms. Doe demonstrated compliance with all of the requirements in Rule 23.01 and that the class action was maintainable under Rule 23.02(1)(a) or (b). The trial court made several factual findings concerning Rule 23's requirements, but the City contends that it abused its discretion in granting class certification because the court's analysis of the issue fell short of the analysis required when certifying a class.

What sort of analysis must a court make when considering whether to certify a class? There are not many reported opinions from Tennessee courts analyzing class action certification. There are, however, a plethora of reported opinions from federal courts addressing the issues surrounding class certification, and Tennessee's courts have looked to those opinions for guidance because the federal rule "is substantially the same" as Tennessee's rule. *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *2 (Tenn. Ct. App. June 29, 2007) (citing *Meighan v. U.S. Sprint Comm'ns Co.*, 924 S.W.2d 632, 637 n.2 (Tenn. 1996)). One of the principles from federal cases that Tennessee courts have relied on is that trial courts have an "independent duty" to "conduct a 'rigorous analysis' of Rule 23 requirements before certifying a class." *Id.* at *6 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). This means that a trial court must "take a 'close look' at the parties' claims and evidence," *Id.* (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997), and then "provide a sufficient explanation of [its] analysis to provide an opportunity for meaningful appellate review." *Id.* at *51.

The City asserts that the trial court's analysis fell short of the "rigorous analysis" required to certify a class because the court failed to adequately define the class it certified. Federal cases hold that a failure to define the purported class constitutes error, which requires the court to vacate the trial court's judgment and remand for further proceedings. *Cf.* FED. R. CIV. P. 23(c)(1)(B) ("An order that certifies a class action must define the

- 5 -

class."). Indeed, "an essential prerequisite to a class action is the existence of a class whose bounds are precisely drawn." *Considine v. Park Nat'l Bank*, 64 F.R.D. 646, 647-48 (E.D. Tenn. 1974). "Clearly delineating the contours of the class . . . serves several important purposes, such as providing the parties with clarity and assisting class members in understanding their rights." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591-92 (3d Cir. 2012). Therefore, courts have not hesitated to overturn orders that attempt to certify vaguely-defined classes. For instance, in *Marcus*, the United States Court of Appeals for the Third Circuit vacated a trial court's certification order that certified the plaintiff's proposed class but did not "set out [the court's] own definition," resulting in a class whose parameters were "far from clear." *Id.* at 592.

Similarly, in *Bloodworth*, we noted:

Based on the trial court's order and the record before us, we cannot determine whether the trial court applied the correct legal principles to the issues raised herein. . . . Neither can we conclude that the trial court has conducted the type of analysis necessary to insure compliance with [the requirements of Tenn. R. Civ. P. 23.02(3)]. Consequently, we must vacate the trial court's order certifying this action as a class action.

*Bloodworth*, 2007 WL 1966022, at *51.

After reviewing the trial court's class certification order, we must agree that the trial court failed to adequately define the class it was certifying. The order contains nothing that would illuminate the class being certified. Rather, the court merely found that "Plaintiff has to find the class it wants certified." Elsewhere in the order, the court hinted at some parameters for the class, but the class definition remained uncertain. For instance, the court stated, in pertinent part, as follows:

The City argues that when the DNA testing came online, [Ms. Doe's] case was five years old, and there were some other 5,000-plus kits not tested because there were no known suspects. Of the 12,000 kits in backlog, the City argues that thousands would be dismissed because they have now been tested, and this would also mean that their claims are not common. The City also points to the three prior plaintiffs who were dismissed, one because of a statute of limitations issue and the other two because their kits were tested and their claims were not viable . . . . This Court is not convinced that [Ms. Doe] cannot be considered typical of the other putative class members. She certainly meets the underlying theories of [her] case. She was raped, she submitted to a sexual assault kit and the kit was not submitted for testing, at least to some 5,000 other victims. The Court has found that she is a proper plaintiff, and there can only be a small number of individualized issues, which many will have in common. Nonetheless, those must be resolved and

they may be resolved to a large extent with the greater numbers being compartmentalized issues that can be resolved by utilization of subclass certification.

Despite these statements, it remained unclear whether the class consists of all 12,000 individuals who had SAKs in the City's possession (which was the class Ms. Doe sought), or whether the class consists only of the individuals who had the 5,000 SAKs that were untested.[3] These ambiguities, along with the court's statement that Ms. Doe needs to find the class she wants certified, suggest that the trial court's approach was to "'certify now and worry later'"—an approach rejected by most courts. *Id.* at \*13 (quoting *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000)).

Nonetheless, Ms. Doe contends that the trial court did adequately define the class because the court's order "should be understood as incorporating [Ms. Doe's] definition of the proposed class, but subject to the understanding that additional discovery would aid in the refinement of the class." In the motion for class certification, Ms. Doe proposed the following class definition:

> The named class representatives and all similarly situated claimants are all individuals who submitted to the dramatically invasive process of providing the City of Memphis with sexual assault kits concerning their charges of rape. The particular circumstances of each individual claim is not the primary focus of this litigation. Rather, the genesis of this class action is the City's collective failure to manage and effectively use approximately 12,000 rape kits and its direct effect of causing severe emotional harm upon each of the forgotten victims.

Respectfully, even if the trial court incorporated this definition, the class definition fell short of what is required. "Before a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quoting 5 James W. Moore et al., MOORE'S FEDERAL PRACTICE § 23.21[1] (3d ed. 1997)). In other words, "'[f]or a class to be sufficiently defined, the court must be able to resolve the question of

---

[3] After making the public announcements in August and October 2013, the City conducted an audit of the SAKs in its possession. The audit was completed in 2014 with the following results:

- 3,670 of the SAKs had been tested
- 1,552 of the SAKs had been tested, in part, for serology
- 6,642 of the SAKs had not been tested

Of the 6,642 SAKs that had not been tested, 5,683 were from the years 1985 through 2002, meaning they predated the advent of the Combined DNA Index System ("CODIS") database.

whether class members are included or excluded from the class by reference to objective criteria.'" *Id.* at 538-39 (quoting MOORE'S FEDERAL PRACTICE § 23.21[3]) (citation omitted).

Using Ms. Doe's proposed definition, a court still could not ascertain whether someone was a member of the class by referencing objective criteria. For instance, her proposed definition of the 12,000 individuals whose SAKs were in the City's possession is so broad that it includes SAKs of putative class members that were, in fact, tested, such as those of Ms. Graves and Ms. Johnson. Furthermore, Ms. Doe's proposed definition does nothing to distinguish the set of individuals whose SAKs were properly not tested because an assailant was apprehended by other means. The proposed definition also does nothing to distinguish the more than 5,000 SAKs that were not tested because they pre-dated the advent of CODIS and were subject to a different investigative standard.[4] Given this impreciseness in the proposed definition, we agree with the City that the only way a court could determine whether an individual was included in or excluded from the class would be through a "mini-trial" for each to determine whether the City "failed to manage and effectively use" the individual's SAK.

The Sixth Circuit Court of Appeals rejected a similar class definition in *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009). In *Romberio*, the district court certified a class using the definition proposed by the plaintiffs. *Id.* at 428. That definition included "[a]ll plan participants and beneficiaries insured under ERISA[-] governed long-term disability insurance policies/plans issued by UnumProvident" who had a claim "denied, terminated, or suspended." *Id.* at 427. The Sixth Circuit reversed, holding that "a class limited to those persons whose benefits were denied or terminated would necessarily include many individuals whose claims were *properly* denied for medical reasons." *Id.* at 431.

---

[4] The Tennessee Supreme Court has described CODIS as follows:

CODIS, which is a computer software program, is a three-tiered system that allows DNA-related information to be shared between local agencies, or local DNA index systems ("LDIS"), state agencies, or state DNA index systems ("SDIS") and the FBI, or the National DNA Index System ("NDIS"). [David E.] Newton, *DNA Evidence [and Forensic Science]* at 47 [(Infobase Publ'g 2008)]; *see also LDIS, SDIS, and NDIS,* DNA Initiative, http://www.dna.gov/solving-crimes/cold-cases/howdatabasesaid/codis/ (last visited June 6, 2011). . . . CODIS "'allows State and local forensics laboratories to exchange and compare DNA profiles electronically in an attempt to link evidence from crime scenes for which there are no suspects to DNA samples of convicted offenders on file in the system.'" *Banks v. United States,* 490 F.3d 1178, 1181 (10th Cir. 2007) (quoting H.R.Rep. No. 106-900(I), at 8 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324).

*Powers v. State*, 343 S.W.3d 36, 45-46 (Tenn. 2011) (footnote omitted). And, Chief Crowe explained the standard for pre-CODIS testing as follows: "As [Ms. Doe's] sexual assault occurred in 1997, consistent with professional investigation standards, Ms. Doe's SAK was not submitted for DNA testing during the investigation because the DNA testing would only be conducted if a suspect had already been identified."

As the court explained:

[T]he plaintiffs in this case challenge a group of loosely-defined practices that were *not* applied uniformly to a discrete, easily-defined class of individuals. Indeed, the record reveals that Unum pays billions in disability benefits annually, which means that, despite Unum's alleged profit-driven claim review practices, many claimants successfully pass through the process and receive disability benefits as a result. Nor can it be said that all class members whose claims for long-term disability benefits were denied or terminated would have been entitled to benefits but for Unum's use of the alleged improper practices. Some of the denials and/or terminations were no doubt merited for medical reasons. As even a cursory search on Westlaw or Lexis Nexis will illustrate, many individuals who request disability benefits—whether under ERISA or social security—are unable to establish entitlement to those benefits. It follows that a class limited to those persons whose benefits were denied or terminated would necessarily include many individuals whose claims were *properly* denied for medical reasons.

To be sure, the district court did not define the class as including those participants whose disability claims were denied or terminated. The court was more specific, defining the class to include those participants whose claims were denied or terminated "after being subjected to any of the practices alleged in the Complaint." Such definition, however, does little to distinguish between the set of individuals whose claims were properly denied for valid medical reasons and the set of individuals whose claims were improperly denied for profit-driven reasons. Indeed, as Unum has correctly argued, the only way to distinguish between the two sets of individuals is to engage in individualized fact-finding, and the need for such individualized fact-finding makes the district court's class definition unsatisfactory. *See John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (noting that "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23"); *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (explaining that a class definition should be based on objective criteria so that class members may be identified without individualized fact finding); 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.21[3][c] (3d ed. 2007) (explaining that "[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class").

The problem with the class definition, moreover, carries over into problems with typicality. As the court explained in *Sprague*, 133 F.3d at 399: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." There must be some

connection, in other words, between the merits of each individual claim and the conduct affecting the class. Absent such a connection, there is no basis upon which to fashion class-wide relief. Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006), the typicality premise is lacking, for—under those circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members.

*Id.* at 430-31 (footnote omitted).

Similarly, Ms. Doe's proposed definition encompasses many individuals who do not have a viable claim to the relief requested. Thus, we conclude that the trial court inadequately defined the class it was certifying even if it incorporated the definition proposed by Ms. Doe.

## II. Discovery Limitations

Despite the trial court's inadequate definition preventing this Court from conducting a meaningful review so as to reach the "conclu[sion] that the trial court has conducted the type of analysis necessary to insure compliance with [the Rule 23] requirements," Ms. Doe urges this Court not to vacate the trial court's certification order. *Bloodworth*, 2007 WL 1966022, at *51. She argues that the absence of a precise class definition is justified because she could not propose a more precise class definition due to the trial court's limitations on discovery that prevented her from learning "not only names and addresses of [other victims], but other details such as where and when the victims' rapes occurred, and presumably what the disposition of each SAK was."

It is not uncommon for courts to limit class-wide discovery prior to a case being certified as a class action. *See Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 169 (S.D.N.Y. 2012) (stating that plaintiffs were "only entitled to discovery related to either the named plaintiffs or to company policies to support a motion (not yet filed, much less granted) for class certification" because "plaintiffs are not entitled to discovery about individual potential class members until plaintiffs have moved for and been granted class certification"); *Bradford v. WR Starkey Mortg., LLP*, No. CIV A 206-CV-86-WCO, 2007 WL 2302514, at *2 (N.D. Ga. Aug. 2, 2007) (holding that plaintiff's requests for information and mortgage loan documents were appropriate in regard to the named plaintiff but finding that "it would be improper to allow plaintiff to engage in classwide discovery on this issue prior to class certification").

Indeed, one court observed,

"Precertification discovery should be structured to facilitate an early certification decision while furthering efficient and economical discovery on the merits. The determination whether the prerequisites of Rules 23(a) and (b) are satisfied can generally be made on the pleadings and declarations, with relatively little need for discovery. *To the extent discovery is needed prior to the certification hearing, it should be directed at the named parties; only upon a demonstration of need—for example, where persons are identified as having information relevant to certification issues—should discovery of putative class members be permitted.*"

*Larson v. Burlington N. & Santa Fe Ry. Co.*, 210 F.R.D. 663, 665 (D. Minn. 2002) (quoting Manual for Complex Litigation § 30.12, at 215 (3d ed.)) (emphasis added); *see also Drossin v. Nat'l Action Fin. Servs., Inc.*, No. 07-61873-CIV, 2008 WL 5381815, at *3 (S.D. Fla. Dec. 19, 2008) (rejecting "pre-class certification discovery of identifying information of potential class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action, as opposed to for reasons of discovering information 'relevant to the subject matter involved in the pending action'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-353 (1978)).

A thorough review of the record shows that the information Ms. Doe claims she lacked was either provided to her or she failed to demonstrate that it was necessary for deciding the class certification issue. Notably, she received detailed information regarding all four named plaintiffs, the Memphis Police Department's historic policies and procedures, and the 12,000 SAKs, including when they were collected and their test status. Furthermore, Ms. Doe questioned Deputy Chief Donald Crowe about these issues in two separate depositions. Ms. Doe's argument on this issue is unavailing.

In sum, because we cannot determine the parameters of the class certified by the trial court, we cannot conduct a meaningful review. Therefore, we must vacate the trial court's class certification order and remand for further proceedings as may be necessary and are consistent with this opinion.

CONCLUSION

The judgment of the trial court is vacated, and the matter is remanded for further proceedings as may be necessary. Costs of this appeal are assessed against the appellee, Janet Doe, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE